IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FREDERICK KLOPFER,

    Plaintiff,

vs.                                                 CIV 16-0176 KBM/SCY

DAVID J. SHULKIN,
Secretary of Veterans Affairs,

    Defendant.

# **MEMORANDUM OPINION AND ORDER**

Plaintiff Frederick Klopfer (Plaintiff) asserts claims of employment discrimination arising out of Plaintiff's employment as a Psychologist with the Department of Veterans Affairs (VA). *See* Complaint for Employment Discrimination on the Basis of Age and Sex ¶¶ 1, 6 *(Doc. 1)* (Complaint). Defendant Secretary of Veterans Affairs (Defendant) has moved for summary judgment on all of Plaintiff's claims*. See Doc. 30* (Motion). The Court has jurisdiction over the claims under 28 U.S.C. § 1331, and the parties have consented to the exercise of jurisdiction, including the entry of final judgment, by the undersigned Magistrate Judge. *See* 28 U.S.C. § 636(c); *(Docs. 9 & 10).* Having given due consideration to the memoranda and exhibits submitted by the parties and the relevant authorities, the Court finds that there are no material issues of fact in dispute and that Plaintiff has failed to submit evidence that would permit judgment in his favor. Therefore, the Court will grant Defendant's Motion for Summary Judgment.

## I. BACKGROUND[1]

On February 13, 2011, Plaintiff was hired by the VA as a supervisory psychologist after being interviewed by two people, one male and one female, and receiving final approval from a third person, Dr. Kathleen Padilla, who became Plaintiff's supervisor. Mot. at 3, Statement of Undisputed Material Facts (UMF) ¶¶ 1-6; Ex. 1, Klopfer Depo. 8:16-9:9, 10:16-11:15, 13:3-6; Ex. 2, Notification of Personnel Action NOA. Dr. Padilla was 60 years old when she hired Plaintiff, and she believed that Plaintiff was in his mid-sixties. UMF ¶¶ 7, 11; Ex. 3, Padilla EEO Statement, 4:2-5, 5:1-6. Plaintiff was actually 62 years old when hired. *See* Ex. 8, Notice of Right to File Complaint. Of the five other program directors, three were over the age of 40 but Plaintiff was the oldest. UMF ¶ 10, Ex. 1, 46:11-49:2.

While Plaintiff was the only male program director, Dr. Padilla had hired two other male employees – one was her secretary, and one worked in the finance department. UMF ¶ 10, Ex. 1, 11:8-15; Resp. ¶ 10, Ex. A, Klopfer Depo. 11:8-15. Plaintiff alleges that Dr. Padilla delayed hiring him in an attempt to get the female who had previously held that position to return. Resp. ¶ 35. Yet Plaintiff bases this allegation, which Defendant disputes, not on personal knowledge but only on what "[o]ther people told me." Ex. A, 95:19-96:14.

Plaintiff worked at the VA residential treatment program located in Gallup, New Mexico. UMF ¶ 8, Ex. 1, 13:21-24. All of the other VA programs were in Albuquerque, and Plaintiff was the sole person not located in Albuquerque under Dr. Padilla's supervision. UMF ¶ 9, Ex. 1, 11:4-7, 46:25-47:2. Prior to Plaintiff's employment, staff at the Gallup VA consistently participated in Albuquerque meetings via a telephone

---
[1] The facts listed are undisputed unless otherwise noted.

located at the Gallup facility. UMF ¶ 13, Ex. 3, 5:21-24. Dr. Padilla instructed Plaintiff to likewise telephonically attend staff meetings that were held in Albuquerque, rather than driving in from Gallup to attend in person. UMF ¶ 12, Ex. 3, 20:23-21:10. Unfortunately, there were sometimes technical problems making Plaintiff's attendance by phone difficult or impossible, including poor connections and meetings held in rooms without telephones. UMF ¶ 14, Ex. 3, 16:1-8, 20:10-19; Resp. ¶¶ 12-13. When Plaintiff was unable to attend a meeting, Dr. Padilla would criticize him but she did not yell at Plaintiff or raise her voice. UMF ¶¶ 17-18, Ex. 1, 63:4-12.

Plaintiff's position was an excepted appointment subject to a one-year probationary period. UMF ¶¶ 3-4; Ex. 1, 23:22-24:10, Ex. 2. Defendant does not dispute that the first time Plaintiff and Dr. Padilla met, she told him that she had a sense he would need weekly supervision. Resp. ¶ 23, Ex. A, 87:1-12. Plaintiff was later criticized by Dr. Padilla for failing to meet her expectations in various aspects of his job performance, including inadequate provision and documentation of care and lack of appropriate staff supervision. UMF ¶¶ 26-27, Ex. 6, Memorandum; Ex. 7, Report of Contact. Dr. Padilla denied Plaintiff's travel and training requests, UMF ¶¶ 19-20, Ex. 3, 8:4-23, and Plaintiff asserts generally that Dr. Padilla treated him differently than the other program supervisors, Resp. ¶ 22, Ex. A, 78:8-19. Plaintiff testified that similar requests, specifically a request to take veterans to a "Stand Down" celebration, was refused when such a request had previously been approved for a younger female employee; in conclusory fashion, Plaintiff maintains that he was criticized for things that the younger female employees were not. Resp. ¶¶ 16, 22, 26, 46, Ex. A, 74:20-76:7, Ex. B, 60:21-61:1. Plaintiff felt that he was supervised more closely than the other program

directors, and asserts that he was the only one written up for not meeting deadlines. Resp. ¶¶ 37-39, Ex. B, 15:14-20, Ex. D, ¶ 35. Yet Plaintiff admits he does not have personal knowledge of directives or discipline imposed on others. Reply at 7, Ex. A, 78:8-10, 92:12-16. Dr. Padilla did tell Plaintiff that she had expected that he would fulfill his duties more successfully due to his years of experience as a psychologist, but Plaintiff concedes that she did not mention his age. Resp. ¶ 43, Ex. 1, 76:23-77:13.

On September 27, 2011, Dr. Padilla extended Plaintiff's rating period, although this did not affect the length of time during which Plaintiff was considered a probationary employee. UMF ¶ 23, Ex. 5, Memorandum. Two days later, Plaintiff contacted the EEO alleging a hostile work environment and citing a series of incidents that he considered harassment, including Dr. Padilla's criticism of his work, denial of his travel requests, and requirement that he attend Albuquerque meetings telephonically despite his difficulties with equipment. UMF ¶ 24, Ex 8. On October 7, 2011, she issued Plaintiff a written reprimand detailing his allegedly poor performance and his failure to respond appropriately to prior attempts at correction. UMF ¶ 25, Ex. 1, 85:2-11. UMF ¶ 26, Ex. 6. When she reviewed the records of Plaintiff's patients during the weekly supervision meeting on October 25, 2011, Dr. Padilla found nine records lacking appropriate documentation, and she issued a report noting the deficiency. UMF ¶ 27, Ex. 7. Plaintiff denies that these were his cases, but concedes Dr. Padilla's report. Resp. ¶ 27, Ex. B, 66:20-23.

On November 9, 2011, Plaintiff was notified that his employment would be terminated during his probationary period for failure to follow supervisory instructions.

UMF ¶ 28, Ex. 9, Letter. Plaintiff's employment with the VA was terminated effective November 25, 2011. UMF ¶ 28, Ex. 9.

On November 10, 2011, the day after the termination notice, Plaintiff filed a formal complaint of discrimination with the EEO alleging that he had been subjected to a hostile work environment and discriminated against based his age and gender. UMF ¶ 32, Ex. 10, Notice of Corrected Partial Acceptance of EEO Complaint. At that time, Plaintiff was 63 years old. UMF ¶ 30, Ex. 8. The EEO accepted 24 listed acts for consideration in relation to Plaintiff's claim of a hostile work environment, all of which related to the telephonic meetings and Dr. Padilla's criticism of Plaintiff's job performance and denial of his travel requests. UMF ¶ 32, Ex. 10. The EEO also considered two discrete acts of alleged discrimination, namely Plaintiff's receipt of the written reprimand on October 7, 2011 and Plaintiff's termination from his employment on November 25, 2011. UMF ¶ 32, Ex. 10. Of note, it is undisputed that Dr. Padilla was unaware that Plaintiff had contacted the EEO or had filed an EEO complaint until *after* Plaintiff's termination. UMF ¶ 25, Ex. 1, 85:12–86:9.

After investigation, the EEO mailed a final agency decision to Plaintiff on December 10, 2015 that denied all of Plaintiff's claims. UMF ¶ 33. Shortly thereafter, on March 10, 2016, Plaintiff timely the instant action alleging discrimination on the basis of age and sex. UMF ¶ 34; Compl. ¶ 1. Plaintiff's Complaint contains two counts, one for "age discrimination" and one for "sex discrimination," both of which purport to rely on Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*, and include allegations of disparate treatment and a hostile work environment. Compl. ¶¶ 1, 21–28. However, age is not a protected category under Title VII. *See* 42 U.S.C. § 2000e-2(a)(1)

(prohibiting employment discrimination because of "race, color, religion, sex, or national origin"). "Looking beyond labels to the substance of the allegations . . . so as to do justice," *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1107 (10th Cir. 2009), the Court will follow the lead of Defendant, *see* Mot. at 9-19, and construe the Complaint as raising claims under both Title VII and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623 *et seq.*, and setting forth theories of disparate treatment and a hostile work environment.

Defendant has moved for summary judgment and argues that all of Plaintiff's claims must fail as a matter of law because Plaintiff has not presented evidence that the either an adverse employment action or allegedly hostile acts had any relation to Plaintiff's age or gender, nor were they sufficiently severe or pervasive to alter the conditions of Plaintiff's employment. Mot. at 2, 10.

## II.     DISCUSSION

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court will draw all reasonable inferences in favor of Plaintiff, as the nonmoving party. *See Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015). However, Plaintiff must point to evidence, not mere allegations, which would allow a rational factfinder to enter judgment in his favor to defeat summary judgment. *See id.* at 1265–66. Both Title VII and the ADEA require Plaintiff to prove that his employer intentionally discriminated against him. *See id.* at 1266. This proof may be provided "through either direct evidence or circumstantial evidence that creates an inference of intentional discrimination." *Id.*

### A. Hostile Work Environment

A hostile work environment claim requires proof that "the workplace [was] permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998). The environment must be both subjectively and objectively hostile or abusive when considering all the circumstances, including 1) the frequency of the discriminatory conduct, 2) the severity of the conduct, 3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and 4) whether the conduct unreasonably interferes with the employee's work performance. *Id.* While not every instance of harassment needs to be based on the protected status, there must be some indication of discriminatory animus. *See Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1263 (10th Cir. 1998).

Plaintiff asserts that he was subjected to a hostile work environment in relation to both his age and his gender. Compl. ¶¶ 23, 27. However, the conduct he alleges in support of his claims consists only of Dr. Padilla's manner of supervision and criticism of his work. "Normal job stress does not constitute a hostile or abusive work environment." *Trujillo v. Univ. of Colo. Health Sci. Ctr.*, 157 F.3d 1211, 1214 (10th Cir. 1998). Policy disagreements and "[p]ersonality conflicts between employees" without evidence of physical threat, humiliation, or even an offensive utterance "are not the business of the federal courts." *Id.* (internal quotation marks omitted). None of the conduct complained of by Plaintiff is discriminatory intimidation, ridicule, or insult that is objectively hostile, ageist, or sexist. Plaintiff points to only one remark by Dr. Padilla that he interprets as

7

disparaging him based on age, and he concedes that she mentioned only his years of experience, not his physical age. This ambiguous stray remark is not sufficiently severe or pervasive to alter the conditions of Plaintiff's employment. The Court therefore concludes that Plaintiff has presented insufficient evidence to create a jury question on his hostile work environment claim.

### B. Disparate Treatment - Age Discrimination

"[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). Plaintiff's claimed instances of discrimination include criticism of his work, denials of travel requests, training, and access to meetings, and the ultimate termination of his employment. Compl. ¶ 23. For a disparate treatment claim, however, an adverse employment action requires a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007). "[A] mere inconvenience or an alteration of job responsibilities" does not constitute an adverse employment action. *Id.* The termination of Plaintiff's employment is therefore the only actionable basis for his claim of disparate treatment based on his age.

When a plaintiff relies on circumstantial evidence to prove a disparate treatment claim, as Plaintiff does here, the Court generally employs a burden-shifting framework. *See id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). "Under the *McDonnell Douglas* framework, a plaintiff first must establish a prima facie case of

gender or age discrimination." *Id.* Only if the plaintiff is able to establish a prima facie case does "the burden of production shift[] to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* If the defendant does so, the burden then shifts back to the plaintiff to prove that the defendant's explanation is a pretext for unlawful discrimination. *Id.*

To establish a prima facie case of discriminatory discharge, Plaintiff must show that he is a member of the class protected by the ADEA and that the termination of his employment occurred under circumstances giving rise to an inference of discrimination. *See Bennett*, 792 F.3d at 1266. Because a plaintiff's burden at the prima facie stage is not onerous, *see id.* at 1267, a presumption of discrimination arises in a termination case when the plaintiff demonstrates that he or she was qualified for the job but was nevertheless discharged and replaced by a significantly younger person, although not necessarily one less than 40 years of age. *See Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1165-66 (10th Cir. 2000). The defendant's subjective reasons for the termination are not considered at the prima facie stage, and a plaintiff need only present evidence of objective qualifications or testimony as to satisfactory performance to show that he or she was qualified. *See Mattera v. Gambro, Inc.*, 94 F. App'x 725, 728-29 (10th Cir. 2004); *see also Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1470 (10th Cir. 1992).

There is no dispute that Plaintiff is within the class of employees protected by the ADEA, that he was objectively qualified for the position by virtue of his academic and professional credentials, or that he was terminated from his employment. *See* UMF ¶ 30; Resp. at 16; Reply at 7. Plaintiff testified at his deposition that after his

termination, his position was filled by a younger female who was "in her 40s." Resp. ¶ 58; Ex. A, 96:15-97:2. Defendant contends that even if this is true, Plaintiff's testimony defines his replacement as being in "his same protected class." Reply at 9. However, Plaintiff need not prove that he was replaced by someone younger than 40 to meet his burden, only that the age difference was significant. *See Munoz*, 221 F.3d at 1166. The Court therefore concludes that Plaintiff has established a prima facie case of age discrimination based on the termination of his employment.

Defendant asserts that it terminated Plaintiff's employment for nondiscriminatory reasons – due to his failure to follow supervisory instructions, as explained in his termination letter. Mot. at 15-17. The termination letter described the basis for Plaintiff's discharge as his failure to follow directions and meet job expectations by properly documenting the provision of care, even after he had previously received a written reprimand. *See* Ex. 9. The Court finds that Defendant has met its burden by articulating a legitimate reason for Plaintiff's discharge. To defeat summary judgment, Plaintiff must produce evidence showing that this explanation is "merely pretextual." *Bennett*, 792 F.3d at 1266. "The plaintiff may establish pretext by showing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Id.* at 1267 (quoting *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1280 (10th Cir. 2010)).

Plaintiff has not provided any such evidence. Instead, Plaintiff gives excuses for his failures, disagrees with Defendant's reasoning, and complains about aspects of his

job unrelated to his discharge, such as the level of supervision he received or his difficulties with attending meetings by telephone. *See* Resp. at 20-23. Yet the Court "ask[s] only whether the employer honestly believed its reasons and acted in good faith upon them," and does not evaluate the wisdom or fairness of an employer's business decisions. *Bennett*, 792 F.3d at 1268 (internal quotation marks omitted).

Plaintiff notes the timing of Dr. Padilla's written counseling – about one week after he first contacted the EEO alleging a hostile work environment. Resp. at 20. Again, it is undisputed that Dr. Padilla was unaware of this complaint until after Plaintiff's employment was terminated and there have been no allegations of retaliation. UMF ¶ 25; Resp. ¶ 25. Moreover, Plaintiff provides no evidence that casts doubt on Defendant's asserted basis for terminating Plaintiff's employment. "Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment." *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1225 (10th Cir. 2007) (internal quotation marks omitted). The Court will therefore grant the Motion as to Plaintiff's age discrimination claim.

C.  **Disparate Treatment - Gender Discrimination**

As discussed above, the termination of Plaintiff's employment is the only adverse employment action that could form the basis for a disparate treatment claim. The *McDonnell Douglas* burden-shifting framework will generally apply to a claim of disparate treatment based on gender just as it does to those claims based on age or other protected status. *See Notari v. Denver Water Dep't*, 971 F.2d 585, 588 (10th Cir. 1992). Usually, "the presumption of invidious intent created by establishing a prima facie case under *McDonnell Douglas* arises precisely **because** the plaintiff belongs to a

disfavored group." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1149 (10th Cir. 2008) (emphasis in original). "When [the] plaintiff is a member of a historically favored group, by contrast, an inference of invidious intent is warranted only when background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Id.* (internal quotation marks omitted). Alternatively, the plaintiff may, without the benefit of presumption, "produce evidence sufficient to support a reasonable inference that, but for his status as a man, the challenged decision would not have occurred." *Id.* "It is not enough, however, for a plaintiff merely to allege that he was a qualified man who was treated differently than a similarly situated woman." *Id.*

Defendant argues that Plaintiff cannot demonstrate background circumstances that support an inference that Defendant discriminates against men, nor can he show that his employment would not have been terminated but for his status as a man. Mot. at 12. Plaintiff argues that he has established his prima case of gender discrimination because: Dr. Padilla had historically hired only females; she attempted to delay Plaintiff's hiring to instead fill the position with a female employee who had formerly held that position; Plaintiff served as the only male program supervisor; and Plaintiff was treated differently than female program supervisors because he was supervised more closely, was the only one written up for not meeting deadlines, and was criticized for attempting to organize an event that had previously been organized without issue by a female employee. Resp. at 15. Plaintiff argues that Dr. Padilla's hiring of two male employees does not evidence a lack of discrimination because they were both nonprofessionals. Resp. at 16. Some unidentified source who "made" him "aware" is the

support for Plaintiff's "belief" that Dr. Padilla would yell only at male employees. Resp. ¶ 38; Resp. at 16.

The Court disagrees with Plaintiff's contention that the above "facts" provide sufficient evidence of background circumstances demonstrating discrimination against males, or alternatively, that they demonstrate that he would not have been discharged but for his status as a male. Resp. at 16. While Plaintiff alleges that Dr. Padilla had previously hired only females, he cites no evidence for this other than his own recollection, admits he does not know whether there were men hired before he began working at the VA, and does not dispute that Dr. Padilla hired at least two male employees. Ex. A, 11:8-19. Although Dr. Padilla attempted to first fill his position with a female employee, he admits that the person in question was the previous program supervisor, whom Dr. Padilla was attempting to convince to return. Ex. A, 95:19-23. While Plaintiff was the sole male program director, there were only six program directors in total. UMF ¶ 10. This ratio does not support an inference of discrimination. *See Held v. Ferrellgas, Inc.*, 505 F. App'x 687, 690-91 (10th Cir. 2012) (reverse discrimination not reasonably inferred from the fact that there was one man among a five-person team).

Indeed, Plaintiff lacks personal knowledge that could support most of his claims of differential treatment. Reply at 7, Ex. A, 78:8-10, 92:12-16. In fact, Plaintiff's own testimony contradicts his position that Dr. Padilla yelled only at male employees, Ex. A, 83:3–9. The Court therefore concludes that Plaintiff has not demonstrated "background circumstances [that] support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Adamson*, 514 F.3d at 1149 (internal quotation marks omitted). Consequently, Plaintiff cannot establish a prima facie case of gender

discrimination under the *McDonnell Douglas* framework. While Plaintiff is still entitled to prove that his employment would not have been terminated but for his status as a man, he has not presented any evidence suggesting that his discharge was related to his gender. The Court will therefore also grant the Motion as to Plaintiff's claim of sex discrimination.

Wherefore,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment on Plaintiff's Claims for Age and Sex Discrimination (Doc. 30) is **granted**. The Court will enter Summary Judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure and dismiss this action with prejudice.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent